In the United States District Court
for the District of Kansas

———————

Case No. 20-cr-40027-TC

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

NATHANIEL ALEXIS WILLIAMS,

*Defendant*

———————

## MEMORANDUM AND ORDER

Nathaniel Williams pled guilty to one count of intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 86 at 1; Doc. 84. He now moves to vacate his sentence under 28 U.S.C. § 2255, and requests an evidentiary hearing. Doc. 86. In his motion, he argues that his plea was the product of ineffective assistance of counsel and was therefore not knowing and voluntary. *Id.* For the following reasons, Williams's motion, Doc. 86, is denied.

### I

### A

A prisoner may move to vacate their federal sentence if it was, among other things, "imposed in violation of the Constitution or laws of the United States." 28 U.S.C § 2255(a). If "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the motion may be dismissed without a hearing. 28 U.S.C § 2255(b).

Two situations fit that standard. First, a motion may be dismissed without a hearing "'where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and

records' in the trial court.'" *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)). Second, a motion may be dismissed without a hearing "where the motion alleges circumstances 'of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.'" *Id.* In either case, a pro se petition must be construed liberally. *United States v. Weeks*, 653 F.3d 1188, 1206 (10th Cir. 2011).

Sometimes a hearing is necessary. If a prisoner is not conclusively entitled to no relief, "the court shall cause notice [of the Section 2255 motion] to be seved upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C § 2255(b).

**B**

Several years ago, two troopers with the Kansas Highway Patrol stopped Williams and approached his vehicle. Doc. 86-2 at 1.[1] One of the officers, Trooper Rule, approached a passenger in Williams's vehicle and instructed that passenger to roll down her window. *Id.* When she complied, Rule asked "who's been smoking weed?" Doc. 45 at 3. Williams denied that he had done so, and Rule replied "how come I'm smelling marijuana?" *Id.* He asked Williams and his passenger to exit the vehicle and remarked that "it reeks of marijuana." *Id.* Rule opened the trunk of Williams's car and then opened a suitcase within the trunk. *Id.* The suitcase contained sixteen packages, some of which tested positive for methamphetamine. *Id.*

Williams's attorney moved to suppress the drugs discovered in the course of Rule's search. Doc. 45. Among other things, the motion argued that "the smell of marijuana may justify a search of a vehicle," but "[t]he odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause to search the trunk of the vehicle." *Id.* at 7 (citing *United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005)). The Government moved to continue the deadline for its response to Williams's suppression motion. Doc. 46. That motion was granted, and the accompanying order noted that "[t]he parties are currently discussing a potential

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

2

non-trial resolution." Doc. 49. It likewise reflected that "it is the government's understanding that the defendant needs additional time to evaluate his options." *Id.* Williams then filed notice of his intent to change his plea, Doc. 50, which mooted the suppression motion, Doc. 56.

Williams pled guilty to one count of intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). He did so pursuant to a written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). Docs. 65, 66, and 67. Consistent with that binding plea agreement, Williams was sentenced to a term of 144 months. Doc. 86 at 1; Doc. 84. He did not file a direct appeal. *See also* Doc. 67 at ¶ 10 (waiving his right to appeal or collaterally attack).

Instead, he turned to Section 2255, and moved to vacate his conviction. Doc. 86. The Government was ordered to respond, Doc. 87, and did so, Doc. 94. In turn, Williams filed a motion to compel some video footage, Doc. 96, which was denied without prejudice, Doc. 99. He then filed a motion to strike related to that same footage, Doc. 101.

Williams's deadline to reply to the Government's response was suspended during the video footage dispute "pending a determination as to whether he has received the appropriate video." Doc. 102. He received the appropriate video, *see* Doc. 103, so that deadline was reimposed. Doc. 104. It gave Williams roughly a month to file replies in support of both his motion to vacate and his motion to strike. *Id.* A month passed, Williams's deadline expired, and he filed no reply in support of either motion. His motion to strike was denied. Doc. 105.

Another month passed, and Williams filed a new motion. In it, he seeks to strike the Government's video footage and requests discovery pursuant to Habeas Rule 6.[2] Doc. 106. The Government filed a

---

[2] Williams alleges that the Government failed to deliver an accurate copy of the video. According to Williams, the video he received from the Government lacks audio, unlike the copy the Government filed conventionally. *See* Doc. 106 at 1. But the Government relied on the Clerk's office to copy the conventionally filed video before serving it upon Williams. Doc. 103 at 2. Court staff has confirmed that the original video that is in the Clerk's office file has audio, which begins several minutes into the recording. As a result, Williams' motion to strike, Doc. 106, is DENIED.

response in opposition, Doc 107, and also filed a motion requesting that Williams be ordered to show cause why his Section 2255 petition should not be dismissed, Doc. 108.

## C

Williams presents two ineffective assistance of counsel theories in his motion to vacate. The first theory is that his "lawyer failed to raise a meritorious Fourth Amendment issue" because she failed to "object to an unlawful search and seizure" of his vehicle. Doc. 86 at 4. That oversight allegedly prevented him from being able to suppress adverse evidence. *Id.* The second theory is that Williams "was told that 'if the police said that they smelled drugs in my vehicle then they were entitled to search my vehicle during the traffic stop.'" *Id.* at 5. That advice misled him into pleading guilty, Williams says, because the advice was incorrect. *Id.* In its response, the Government says that Williams's motion is untimely. Doc. 94 at 3. And even if his motion was timely, the government says, both of Williams's arguments fail on the merits. *See id.* at 18.

## II

Williams's motion is untimely. And even if it were timely, it raises no viable ineffective assistance of counsel theory. As a result, Williams' motion for relief pursuant to 28 U.S.C. § 2255 is denied.

## A

Williams's motion is untimely because he did not file it within one year of the date on which his conviction became final. He cannot avail himself of any exceptions to that rule, like the prison mailbox rule, so his petition must be dismissed.

The Antiterrorism and Effective Death Penalty Act (AEDPA) gives federal prisoners one year to seek habeas relief. *See Jones v. Hendrix*, 599 U.S. 465, 479 (2023); 28 U.S.C. § 2255(f). That clock starts running on the latest of four possible dates. *See* 28 U.S.C. § 2255(f). The Government correctly says only one of the four possible dates is

relevant: the date on which the judgment of conviction became final.[3]
Doc. 94 at 3–4 (citing 28 U.S.C § 2255(f)(1)).

Thus, the question is when Williams's conviction became final. *See* 28 U.S.C. § 2255(f)(1). He did not appeal, Doc. 86 at 2, so his conviction became final "upon the expiration of the time in which to take a direct criminal appeal." *United States v. Prows*, 448 F.3d 1223, 1228 (10th Cir. 2006). That time runs for 14 days after the entry of judgment. Fed. R. App. P. 4(b)(1)(A)(i). Williams's judgment was entered February 9, 2022, Doc. 84, meaning he had until February 23, 2022 to file an appeal. He did not file one, so the limitations period began to run on that day—and then expired a year later, in February 2023. Williams's Section 2255 motion was docketed in August 2023, Doc. 86, roughly six months after the Section 2255(f)(1) period expired.

That said, the certificate of service on Williams's motion indicates that he executed his motion in February 2023, which is within the limitations period. And because Williams is a prisoner, he may be able to avail himself of the "prison mailbox" rule. That rule deems a "pro se prisoner's notice of appeal … timely" if it is "delivered to prison officials for mailing prior to the filing deadline." *See Harris v. Dinwiddie*, 642 F.3d 902, 907 n.6 (10th Cir. 2011) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Prisoners must establish their compliance with the rule. *Price v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005). A prisoner can do so either of two ways. First, he or she can "alleg[e] and prov[e] that he or she made timely use of the prison's legal mail system" so long as "a satisfactory system is available." *Id.* Second, "if a legal system is not available," a prisoner can establish that he or she made "timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penal-

---

[3] This is indeed the only relevant limitations period. Section 2255(f)(2) does not apply because Williams alleges no "impediment[s] … created by governmental action in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(f)(2). Nor does he rely on a right that "has been newly recognized by the Supreme Court and made retroactively applicable," making Section 2255(f)(3) irrelevant. 28 U.S.C. § 2255(f)(3). And Section 2255(f)(4) does not apply because it would set a period shorter than the Section 2255(f)(1) period. *See* 28 U.S.C. § 2255(f) (instructing courts that "[t]he limitation period shall run from the latest of" the four options).

ty of perjury of the date on which the documents were given to pris-
on authorities and attesting that postage was prepaid." *Id.*

Williams has not demonstrated that he qualifies for either option.
In both cases, he must "document his use of the legal mail system,"
because "[i]f a legal mail system were available, [he] would be re-
quired to use it to obtain the benefit of the mailbox rule." *See Price*,
420 F.3d at 1166. His motion declares only that it "was placed in the
prison mailing system" on February 1. Doc. 86 at 12. That is insuffi-
cient to show that a legal mail system was available and that he used
it. *Price*, 420 F.3d at 1166 ("Alleging only that [a prisoner] used 'the
institutional mails' is insufficient to connote use of the 'legal mail sys-
tem.'"). And because Williams does not swear that a legal mail system
was unavailiable, he cannot rely on the second option under the pris-
on mailbox rule. That option would ordinarily be in play, since it
merely requires Williams to "execut[e] a notarized statement or a dec-
laration under penalty of perjury pursuant to 28 U.S.C. § 1746 setting
forth the date of his deposit in the regular mail system and stating
that he included pre-paid postage." *Id.* at 1166–67. But as discussed, a
prisoner may use this option only "if a legal system is not available."
*Id.* at 1166. Williams has not shown that a legal mail system was una-
vailable, so he does not qualify for the second mailbox rule option.
*See id.*; *see also United States v. Rodriguez*, 422 F. App'x 668, 670 (10th
Cir. 2011) (refusing to apply the mailbox rule becuase a prisoner did
not "demonstrate[]—as is required in this circuit—that he did not
have access to a legal mail system and thus could send his petition
through regular mail and still qualify for the mailbox rule").

Sometimes courts give litigants an opportunity to fix a defective
attempt to rely on the prison mailbox rule. *See, e.g., Brown v. City of Las
Cruces Police Dep't*, 347 F. Supp. 3d 792, 810 (D.N.M. 2018). But they
do so when, for example, litigants recognize their mistake and request
an opportunity to correct it. *See id.* Williams has not done so, even
after the Government filed a response, Doc. 94, raising the prison
mailbox rule issue nearly six months ago. In that time, Williams nei-
ther filed a reply nor said anything about the alleged timeliness issue
with his motion. Rather, he filed a series of motions seeking discov-
ery. Doc. 101; Doc. 106.

To be sure, Williams is pro se, and a court must construe his
pleadings liberally. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th
Cir. 2009). And courts prefer to decide "cases on the merits as op-
posed to dismissing them because of minor technical defects." *See*

*Denver & Rio Grande W. R. Co. v. Union Pac. R. Co.*, 119 F.3d 847, 848 (10th Cir. 1997) (discussing polices embedded in the Federal Rules of Appellate Procedure). Yet while "these principles run deep," the Tenth Circuit has "never interpreted them to give litigants—even pro se litigants—carte blanche to disregard congressionally established procedural rules." *United States v. Ceballos-Martinez*, 371 F.3d 713, 717 (10th Cir. 2004). Those procedural rules—embodied in AEDPA and Tenth Circuit precedent—gave Williams several ways to avoid the statute of limitations. He did not take any of them. His motion must therefore be dismissed as untimely.[4] *See id.*; *United States v. Fredette*, 191 F. App'x 711, 714 (10th Cir. 2006) (reaching a similar conclusion).

**B**

Even if Williams's motion were timely, he would not be entitled to relief. He offers two arguments why his counsel was ineffective, rendering his plea involuntary. *See* Doc. 86 at 4–5. Both arguments fail to persuade.

A valid guilty plea must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). A guilty plea may be involuntary due to the ineffective assistance of counsel. *Id.* at 57–59. Courts apply a "two-part test for ineffective assistance in the plea context: deficient performance and resulting prejudice." *United States v. Spaeth*, 69 F.4th 1190, 1203 (10th Cir. 2023). The first half asks whether "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57. The second half "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. To satisfy this requirement, Williams "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Neither of Williams's counsel's alleged errors were objectively unreasonable. One alleged error was "fail[ing] to object to a Fourth Amendment violation in the unlawful search and seizure of [Williams's] vehicle." Doc. 86 at 5. The other is nearly identical. Doc. 86

---

[4] As a result, the Government's request for a show cause order, Doc. 108, is denied as moot.

at 4. In both cases, Williams's counsel appears to have made a reasonable decision that does not suggest ineffective assistance.

First, Williams's counsel did not fail to object to the alleged Fourth Amendment issue. Doc. 45. Second, his counsel appears to have given Williams appropriate advice under the circumstances. Williams summarizes that advice as follows: he "was told that if the police said that they smelled drugs in [his] vehicle then they were entitled to search [it]." Doc. 86 at 5 (internal quotation marks omitted). That alleged advice appears sound: "[T]he odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage." *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998); *United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) ("An officer's detection of the smell of drugs in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause.") And Williams agreed that "Troopers smelled the odor of raw marijuana coming from inside [his] vehicle." Doc. 67 at 2. Then they searched the vehicle and "located a suitcase in the cargo area." *Id.*

Of course, there was a colorable argument that *Downs* did not apply. As Williams's counsel argued, Trooper Rule allegedly asked about "smoking weed," which may suggest burnt rather than raw marijuana. Doc. 45 at 3; *Downs*, 151 F.3d at 1303. Burnt marijuana would have authorized a relatively narrow search, so Trooper Rule's comment gave Williams's counsel a plausible basis on which to seek suppression. *See id.* Still, Trooper Rule later referenced raw marijuana, the sort that would create probable cause for the broad search that the officers conducted. Doc. 67 at 2; *Downs*, 151 F.3d at 1303.

There is no reason to believe that Williams's counsel, in weighing these considerations, fell "below an objective standard of reasonableness." *Hill*, 474 U.S. at 57. The alleged Fourth Amendment issue was a close question involving disputed factual issues. Thus, it is not the case that "no competent attorney would think a motion to suppress would have failed" under the circumstances. *See Premo v. Moore*, 562 U.S. 115, 124 (2011). Moreover, Williams and the Government later agreed on a Rule 11(c)(1)(C) plea. *See* Doc. 67 at 1. Under the circumstances, Williams's counsel made understandable strategic choices. *See Miles v. Dorsey*, 61 F.3d 1459, 1476 (10th Cir. 1995) (agreeing that competent counsel may make "a strategic and tactical decision not to further investigate" one or another defenses).

### III

For the foregoing reasons, Williams's Motion to Vacate under 28 U.S.C. § 2255, Doc. 86, is DISMISSED. His Motion to Strike Video Evidence, Doc. 106, and the Government's Motion for an Order to Show cause, Doc. 108, are DENIED.

It is so ordered.

Date: May 15, 2024                              _s/ Toby Crouse_____
                                                Toby Crouse
                                                United States District Judge